Paul F. Murphy and Anna Katherine Murphy v. Commissioner.
Murphy v. Commissioner
Docket No. 87033.
United States Tax Court
T.C. Memo 1962-219; 1962 Tax Ct. Memo LEXIS 93; 21 T.C.M. (CCH) 1161; T.C.M. (RIA) 62219; September 14, 1962
*93 Charles P. Duffy, Esq., William T. Schantz, Esq., and Prescott W. Cookingham, Esq., for the petitioners. Donald G. Daiker, Esq., and Aaron S. Resnik, Esq., for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: The respondent determined deficiencies in the petitioners' income taxes, as follows: Year
Amount
1952
$8,670.52
1953
6,025.78
1954
6,385.38 The only issue for decision is whether payments to petitioner Paul F. Murphy by a corporation pursuant to a promissory note constitute dividends to him. Findings of Fact Some of the facts are stipulated and are found as stipulated. The petitioners are husband and wife, residing at Oswego, Oregon. They filed their joint income tax returns for the years involved with the district director of internal revenue for the District of Oregon. The wife is a party solely by reason of her participation in the joint returns. Therefore, the term "petitioner" will be used to refer to Paul F. Murphy. In 1951 petitioner and Henry Kuckenberg desired to purchase the Medical-Dental Building, an office building located at 833 S.W. 11th Avenue, Portland, Oregon. This building was the principal *94 asset of the H.S. & D. Investment Company, a corporation owned by persons unrelated to the petitioner and Kuckenberg. The petitioner and Kuckenberg reached a tentative agreement with the owners of H.S. & D. for the purchase of the building. It was contemplated that the major portion of the funds needed for the purchase would be obtained through a mortgage on the building placed with the Massachusetts Mutual Life Insurance Company. However, shortly prior to the time set for closing the sale, the stockholders of H.S. & D. were advised by their attorneys that it would be greatly to their advantage to sell their stock rather than to cause the corporation to sell the building. They accepted this advice and decided to sell only the stock. As a result, the petitioner and Kuckenberg were required to find some other means of financing their purchase. The petitioner obtained most of his share of the purchase price by getting a loan from the United States National Bank. On or about June 4, 1951, therefore, the petitioner and Kuckenberg acquired for $942,500 all of the stock of H.S. & D., each having an equal interest in it. On or about July 6, 1951, H.S. & D. mortgaged the building to *95 the Massachusetts Mutual Life Insurance Company and received a loan of $800,000. For the purpose of this loan the building was appraised at a value of $1,250,000 and $800,000 was the maximum amount the insurance company would lend on a building of this value. A portion of the proceeds of this loan ($46,482.88) was used to discharge a prior mortgage on the building. On July 10, 1951, H.S. & D. was liquidated and the assets, primarily the building and the remaining proceeds of the loan, were distributed to the petitioner and Kuckenberg. The remaining proceeds of the mortgage loan were used to repay a large part of the sums borrowed to finance the purchase of the H.S. & D. stock. However, this sum was not sufficient to repay all of the monies borrowed by the petitioner for the stock purchase. The building was operated by the petitioner and Kuckenberg as a partnership from July 11, 1951, to August 31, 1951. On September 1, 1951, the petitioner formed Murco, Inc., a corporation organized under the laws of the State of Oregon. He transferred to it his interest in the Medical-Dental Building and in return took a negotiable promissory note in the amount of $50,000 and all of the capital *96 stock of Murco except for qualifying shares. Although the petitioner's equity in the building had a fair market value of $225,000 at the time it was transferred to Murco, it was recorded on the books of Murco at a value of $94,572.68, a figure apparently obtained by valuing the building at its adjusted basis for Federal income tax purposes. The capital stock of Murco consisted of 5000 shares of common stock having a par value of $1 per share. Therefore, $5,000 was assigned to the capital stock account on the books of Murco. The amount of $39,572.68 was assigned to the paid-in surplus account. The $50,000 note was payable in annual installments of not less than $5,000. Interest was to be paid on deferred balances at the rate of 5 percent per annum. The petitioner transferred his interest in the Medical-Dental Building to Murco because he believed, for business reasons, that it would be preferable to operate his share of the building in corporate form and because he hoped to avoid certain estate problems should either of the partners die. He took the note for $50,000 from Murco rather than additional capital stock because he continued to owe some of the money he borrowed at the *97 time he purchased the H.S. & D. stock and wished to be in a position to take money from the corporation without impairing its capital to make payments on the loan even if the corporate earnings and profits were not sufficient to allow the payment of a dividend. Murco did pay interest on the unpaid balance of the sum due under the note at the rate of 5 percent per annum, as follows: Date Paid
Amount
August 31, 1952
$ 2,262.25
August 31, 1953
1,687.71
August 31, 1954
670.02 Murco paid the principal amount of the note as follows: Date Paid
Amount
August 31, 1952
$13,000.00
August 31, 1953
9,000.00
August 31, 1954
28,000.00
$50,000.00
The respondent determined that the amounts paid the petitioner by Murco on the note during each of the taxable years were dividends and not payments on a debt. The petitioner, in causing the corporation to issue its note for $50,000 to him, intended to create a genuine debt owing to him by the corporation. Opinion The respondent contends that the petitioner made a contribution to capital of the entire value of his interest in the building when he transferred his interest to Murco and that payments *98 on the corporate note were, therefore, dividends and not payments on a debt. Respondent admits that the terms of the agreement evidenced by the note indicate a debt relationship. However, he asserts that the form of the transaction does not truly reflect its substance and that in reality the petitioner made a contribution to the capital of Murco rather than a loan. Many cases have considered the question whether a debt relationship has been created between a corporation and its shareholder. Generally, they indicate that the creation of a debt relationship depends primarily upon the intention of the parties and the true intent of the parties is to be determined from a consideration of the entire record. ; , and cf. ; ; , affd. per curiam (C.A. 2, 1951); , affd. per curiam *99 (C.A. 6, 1951); , affd. per curiam (C.A. 9, 1950), certiorari denied . Several factors have convinced us that the note for $50,000 was intended to represent a true debt of the corporation to the petitioner. The transaction was evidenced by a negotiable promissory note. This in itself is some evidence that the creation of a true debt was intended. Furthermore, the sum involved was accounted for on the books of Murco as a debt rather than as a capital item and, although unsecured, was not subordinated to any other unsecured debts. The debt was paid even before it was due and interest at the rate provided in the note was timely paid on the unpaid balance. The petitioner has established that Murco was not undercapitalized. The value of the petitioner's half of the building which he transferred to Murco was $625,000. After deducting $400,000, which is one-half of the mortgage to Massachusetts Mutual, petitioner's equity would have a value of $225,000. Although this interest was recorded on the books of Murco at a lesser value, actual values rather than book values should be used in *100 determining adequacy of capitalization. . Using this value, the ratio of debt to capital is approximately 2.6 to 1 even when the debt owing on the mortgage to Massachusetts Mutual is included in the debt figure. This ratio cannot be considered to contain an excessive proportion of debt. This is especially so in the case of a real estate venture where debt financing is frequent. Finally, the existence of a business purpose is also evidence that a genuine debt was intended. In the instant case the petitioner wished to be in a position to extract money from the corporation in order to make payments on the debt he incurred at the time he acquired the H.S. & D. stock. He therefore took a note for a portion of the value of the asset he transferred to the corporation so that money could be taken from the corporation even though its earnings and profits did not justify payment of a dividend. The respondent contends that the petitioner could not have intended to create a genuine indebtedness in the amount of the note because the consideration for the note (i.e., petitioner's interest in the building) was an asset which the corporation needed *101 to conduct its business. We do not believe that this factor alone would preclude the creation of a genuine indebtedness. Decision will be entered for the petitioners.